UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Saint Paul Branch of the National Association for the Advancement of Colored People; Community Stabilization Project, a Minnesota non-profit corporation; Aurora/Saint Anthony Neighborhood Development Corporation, a Minnesota non-profit corporation; Pilgrim Baptist Church; Shear Pleasure, Inc.; Metro Bar & Grill, Inc. d/b/a Arnellia's; Carolyn Brown; Deborah Montgomery; Michael Wright; Leetta Douglas; and Gloria Presley Massey,<br><br>              Plaintiffs,<br><br>v.<br><br>United States Department of Transportation; The Metropolitan Council; and Federal Transit Administration,<br><br>              Defendants. | Civil No. 10-147 (DWF/AJB)<br><br><br><br><br><br><br><br><br><br><br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

_____

Thomas F. DeVincke, Esq., Malkerson Gunn Martin LLP, counsel for Plaintiffs.

David W. Fuller, and Friedrich A. P. Siekert, Assistant United States Attorneys, United States Attorney's Office; and Paul D. Barker, Jr., Esq., U.S. Department of Justice, counsel for Defendants United States Department of Transportation and Federal Transit Administration.

Paul D. Reuvers, Esq., and Jason J. Kuboushek, Esq., Iverson Reuvers, LLC; and Ann K. Bloodhart, Esq., and Donald J. Mueting, Esq., counsel for The Metropolitan Council.
_____

## INTRODUCTION

This action is before the Court on a motion to enforce this Court's orders dated January 26, 2011 (the "January 2011 Order") and January 23, 2012 (the "January 2012 Order"), brought by Plaintiffs The Saint Paul Branch of the National Association for the Advancement of Colored People, Community Stabilization Project, Aurora/Saint Anthony Neighborhood Development Corporation, Pilgrim Baptist Church, Shear Pleasure, Inc., Metro Bar & Grill, Inc. d/b/a Arnellia's, Carolyn Brown, Deborah Montgomery, Michael Wright, Leetta Douglas, and Gloria Presley Massey (together, "Plaintiffs").  (Doc. No. 119.)  For the reasons set forth below, the Court denies the motion.[1]

## BACKGROUND

The facts of this case and applicable scope of review are fully set forth in the Court's January 2011 and 2012 Orders.  (Doc. Nos. 59 & 113.)  The Court briefly restates and updates the facts here.

Plaintiffs brought this action against the United States Department of Transportation ("US DOT"), Federal Transit Administration ("FTA") (together, "Federal Defendants"), and The Metropolitan Council  (collectively, "Defendants"), claiming that Defendants violated the National Environmental Policy Act, 42 U.S.C. § 4331, *et seq.* ("NEPA"), and the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* ("APA"), by

---

[1]     At the hearing on this matter, the Court indicated that it would issue a brief Order followed by a more comprehensive memorandum in December.  The Court has instead decided to issue this full Memorandum Opinion and Order.

preparing a deficient Final Environmental Impact Statement ("FEIS") for the Central Corridor Light Rail Transit project ("CCLRT Project").

In the January 2011 Order, the Court concluded, among other things, that the FEIS was inadequate insofar as it failed to analyze lost business revenues as an adverse impact of the construction of the CCLRT Project, and ordered Defendants to supplement the FEIS.[2] (Doc. No. 59 at 45.) The Court also denied Plaintiffs' request for an order enjoining construction of the CCLRT Project. (*Id*. at 44, 45.)

By letter dated February 8, 2011, counsel for Federal Defendants indicated how the FTA would address the NEPA deficiency identified in the January 2011 Order, explaining that the FTA had "initiated the process to draft an Environmental Assessment ('EA') analyzing the issue of lost business revenue during construction as an adverse impact of the construction of the CCLRT consistent with FTA regulations . . . ." (Doc. No. 60 at 1.) Federal Defendants also noted that the MET Council published a public notice in early February 2011, announcing the undertaking of the EA and a town hall meeting to solicit community input. (*Id*. at 2.) A draft supplemental EA was made available for public review and comment on March 1, 2011; comments were submitted via e-mail and at two public hearings. (Doc. No. 85-2 at 2; Doc. No. 85-1 Abstract.) On April 20, 2011, the FTA issued a Finding of No Significant Impact ("FONSI") and a

---

[2] The Court rejected Plaintiffs' arguments that the FEIS failed to adequately consider cumulative effects of prior projects, that the FEIS did not sufficiently analyze or consider mitigation of the CCLRT's displacement of businesses and residents, and that the FEIS lacked the requisite scope.

supplemental EA.  (Doc. Nos. 85-2 & 85-1.)  Published notice of the same appeared in the Federal Register on May 5, 2011.  (Doc. No. 108, Fed. Reg. 25773.)  The notice explained that any claim seeking judicial review of the supplemental EA or the FONSI must be filed before November 1, 2011.  (*See id.*)

On October 5, 2011, Plaintiffs moved to enforce this Court's January 2011 Order, arguing that Defendants' decision to proceed with a FONSI and EA, rather than to directly supplement the FEIS, violated the Court's January 2011 Order.  (Doc. No. 95.)  In the January 2012 Order, the Court granted in part and denied in part Plaintiffs' motion to enforce, concluding that the FEIS was inadequate insofar as it failed to address the loss of business revenues as an adverse impact of the construction of the CCLRT and requiring Defendants to supplement the FEIS consistent with the January 2011 Order.  (Doc. No. 113 at 10.)  Also, the Court again denied Plaintiffs' request for an order enjoining the CCLRT Project.  (*Id.*)

The Metropolitan Council has been assisting the FTA in, and has provided Plaintiffs with the anticipated schedule for, completing the FEIS.  (Doc. No. 128, Reuvers Aff. ¶ 3, Ex. 1.)  According to that schedule, Defendants expect to publish the Draft Supplemental EIS for comment in December 2012 and, after a period for public comment, to publish the FEIS in May 2013.  (*Id.*; Doc. No. 123, Sarna Decl. ¶ 6.)

## DISCUSSION

Plaintiffs now contend that Defendants have unjustifiably delayed in supplementing the FEIS and ask the Court to order Defendants to produce a supplemental FEIS within thirty days.  Plaintiffs also ask the Court to enjoin construction on the

4

CCLRT project immediately if Defendants fail to do so.  Defendants maintain that they have worked diligently and in good faith to complete the supplemental environmental review and have endeavored to complete the process while also adhering to the procedural requirements of NEPA.

The traditional four-factor test applies to requests for injunctive relief in a NEPA case.  *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2756 (2010).  Accordingly, an injunction is warranted where a plaintiff demonstrates:  (1) it is likely to suffer irreparable harm; (2) remedies at law are not adequate; (3) the balance of equities weigh in plaintiff's favor; and (4) the injunction is in the public interest.  *Id*.  "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."  *Id*. at 2761 (citation omitted).

The Court is mindful of Plaintiffs' desire to speed up the completion of the supplemental environmental review in this case.  However, as the Court has noted previously, the preparation of an EIS requires a specific process and is more involved than that for an EA.  The preparation of a supplemental EIS is governed by regulations set forth in 23 C.F.R. § 771.  Pursuant to those regulations, a supplemental EIS is "to be developed using the same process and format (i.e., draft EIS, final EIS, and ROD) as an original EIS, except that scoping is not required."  23 C.F.R. § 771.130(d).[3]  The relevant

---

[3]     Scoping is used to identify the purpose and need, the range of alternatives and impacts, and the significant issues to be addressed in the EIS.  *See, e.g.*, 23 C.F.R. § 771.123(b).

regulations require that the draft EIS "evaluate all reasonable alternatives to the action and discuss the reasons why other alternatives, which may have been considered, were eliminated from detailed study . . . [and] summarize the studies, reviews, consultations, and coordination required by environmental laws or Executive Orders to the extent appropriate at this stage in the environmental process." 23 C.F.R. § 771.123(c).  After a draft EIS is completed, the draft must be made available for public comment for at least forty-five days, a public hearing must be held, and after the comments are considered, a final EIS must be prepared.  23 C.F.R. § 771.123(h)&(i); § 771.125(a)(1).  The final EIS must, among other things, identify the preferred alternative and evaluate all reasonable alternatives considered, as well as discuss substantive comments and responses thereto and describe mitigation measures.  23 C.F.R. § 771.125(a)(1).  The FTA may not complete and sign a Record of Decision sooner than thirty days after publication of the final supplemental EIS or ninety days after publication of the draft supplemental EIS.  23 C.F.R. § 771.127.

  Here, Plaintiffs have not demonstrated that Defendants are failing to comply with the January 2012 Order.  Instead, the record indicates that Defendants are following the required process and expect to circulate the draft supplemental EIS next month.  While the process has undoubtedly been lengthy, there has been no showing of any unjustifiable or intentional delay on the part of Defendants.  Therefore, Plaintiffs' current motion to enforce is properly denied.  Moreover, the factors to be considered in a request for injunctive relief do not support Plaintiffs' request to halt construction of the CCLRT Project.  Plaintiffs have not demonstrated that they will suffer any irreparable harm by

continuation of construction while the supplemental EIS is completed. Indeed, Defendants point out that by December 31, 2012, the civil construction for the CCLRT will be substantially complete, and that remaining limited construction activity will likely result in limited closures of corridor driving lanes, but that closures of sidewalks and business driveways will be very limited or non-existent. (Doc. No. 125, O'Brien Aff. ¶¶ 3, 4.) It is likely that halting the CCLRT Project now would actually exacerbate potential short-term business losses by extending the timeline of construction activities. Moreover, Plaintiffs have again failed to establish that the balance of harms favors them or that an injunction would benefit the public interest. As previously explained, the record demonstrates that, despite Plaintiffs' concerns with the sufficiency of the FEIS, there are significant public benefits to the CCLRT Project and that the interest of the general public to continue moving forward with construction of the CCLRT outweighs any harm to Plaintiffs.

For all of the above reasons, the Court denies Plaintiffs' motion to enforce. The Court notes, however, that it considers Defendants representations regarding its intended timeline to have been made in good faith and expects Defendants to adhere closely to it.

### ORDER

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that: Plaintiffs' Motion to Enforce Court Order (Doc. No. [119]) is **DENIED**:

Dated: November 27, 2012           s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge